UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR VILLALOBOS,<br><br>    Petitioner,<br><br>    v.<br><br>ROSEMARY NDOH,<br><br>    Respondent. | No. 1:17-cv-01432-LJO-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently serving an 8-year sentence in state prison for sex crimes involving a child. He has filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.    PROCEDURAL HISTORY**

On January 13, 2014, Petitioner was found guilty in the Tulare County Superior Court of forcible lewd act on a child (Cal. Penal Code § 288(b)(1)), exhibiting harmful matter to a minor with intent to seduce (Cal. Penal Code § 288.2(a)), and misdemeanor child molestation (Cal. Penal Code § 647.6(a)). (Doc. 1 at 1.[1]) Petitioner was sentenced to a determinate term of 8 years. (Doc. 1 at 1.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

---
[1] Page references are to ECF pagination.

1

DCA"). On May 18, 2016, the judgment was affirmed. (Doc. 1 at 2.) Petitioner filed a petition for review in the California Supreme Court, and the petition was denied on August 17, 2016. (Doc. 1 at 2.)

On October 19, 2017, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on January 19, 2018. (Doc. 15.) Petitioner filed a traverse on February 16, 2018. (Doc. 18.)

## II.  FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

> The underlying incident occurred in Dinuba on July 22, 2009. Villalobos was charged by information in July 2010 and tried before a jury in January 2014. A significant portion of the prosecution's case-in-chief was devoted to establishing that members of the victim's family attempted to dissuade her from testifying against the defendant. There was also testimony from a third party witness concerning prior uncharged offenses. Our summary of the trial evidence is limited to information relevant to the specific issues raised on appeal.
>
> Villalobos is described in the record as the victim's step-uncle, being that his brother is her stepfather. On the night in question, Villalobos made a phone call to his brother's home that was answered by the victim. He told her that he needed to come over to retrieve an item, and asked if anyone else was there. She advised that her family members were home, but sleeping. Within minutes of hanging up with Villalobos, she heard him knocking at the front door.
>
> After being let into the house, Villalobos briefly entered and exited the garage before sitting down on a couch in the living room. He then turned on the television and began flipping through channels. The victim came in and out of the room as he was channel surfing and eventually sat down on an adjacent couch. At some point, Villalobos rented what the victim described as a "porno" movie. She looked away from the screen while the movie was playing, but saw at least one scene in which a woman wearing only underwear was unzipping a man's pants. Villalobos asked if she had "ever watched anything like that before," and she told him no.
>
> According to the victim's testimony, Villalobos began whispering things to her, which prompted her to move closer to him in order to hear what he was saying. Once in earshot, she realized he was asking if she had ever "done what the girl was doing in the video to someone." She again replied no, and returned to the other couch. He requested that she come back over and sit on his lap, and she complied.
>
> While the child was seated on his lap, Villalobos put his arm around her waist and began rubbing her upper thigh with one of his hands. As he did this, he said that he "wanted to get close to [her] because [they] had never gotten close or talked." Next, he rubbed his penis over the top of his clothes and asked the victim if she

---

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

"liked that." Feeling uncomfortable, the victim indicated that she did not like it and attempted to get off of his lap. In her words: "I tried getting up to leave and he pulled me back down." He held the victim on his lap for a few more minutes before she was able to move away from him. The victim retreated to her bedroom, and Villalobos departed from the home soon afterward.

The victim reported the incident to her family, who in turn called the police. Officer David Hernandez of the Dinuba Police Department arrived at the victim's house at approximately 12:24 a.m. on the morning of July 23, 2009. He testified to looking around the family's living room and observing an image on their television set. The screen indicated that a program called "Blonde Bimbos" had been paused at 22 minutes into the 88–minute feature. The officer's testimony was corroborated by Comcast billing records, which showed a $13.99 charge for a pay-per-view movie entitled "Blonde Bimbos" that was ordered on July 22, 2009 at 11:14 p.m.

Testifying in his own defense, Villalobos admitted to ordering and viewing "adult entertainment," but disputed the characterization of that material as pornography. He explained: "It wasn't like Barely Legal anything, no teens, it was Blond Bimbos ... Entertainment like Playboy." On rebuttal, a police detective who questioned Villalobos about the incident testified that he had originally described the movie as being "X-rated."

People v. Villalobos, 2016 WL 3018773, at *1–2 (Cal.Ct.App. 2016).

### III.    DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

4

1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

### C. Review of Claim

Petitioner presents one ground for relief. He claims that his admission that the movie was X-rated was insufficient to show that the material in question was "harmful matter" within the meaning of Cal. Penal Code § 288.2, as defined in Cal. Penal Code § 313 and Miller v. California, 413 U.S. 15, 24 (1973). This claim was presented on direct appeal. In the last reasoned decision, the Fifth DCA denied the claim as follows:

*Standard of Review*

"In resolving claims involving the sufficiency of evidence, a reviewing court must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) Each element of the offense must be supported by substantial evidence, i.e., evidence that reasonably inspires confidence and is of credible and solid value. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89; *People v. Raley* (1992) 2 Cal.4th 870, 891.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) This standard of review applies in cases such as this one where the prosecution relies on circumstantial evidence to prove certain elements of the charged offenses. (*Ibid.*)

. . . .

*Exhibition of Harmful Matter*

Current and former versions of section 288.2 forbid knowingly exhibiting to a

5

minor any type of "harmful matter" as that term is defined in Section 313. (Stats.1997, ch. 590, § 1; Stats.2013, ch. 777, § 2.) The law in effect at the time of the subject incident also required proof of the defendant's intent to seduce the minor, which case law has interpreted as the intent "to entice the minor to engage in a sexual act involving physical contact between the perpetrator and the minor." (*People v. Jensen* (2003) 114 Cal.App.4th 224, 240.) Villalobos claims the evidence adduced at trial was insufficient to establish the element of "harmful matter" and/or his intent to seduce the victim.

"Harmful matter" is defined in section 313 as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." (§ 313, subd. (a).) In *People v. Dyke* (2009) 172 Cal.App.4th 1377 (*Dyke*), the First District observed that this statutory language tracks the definition of obscenity established in *Miller v. California* (1973) 413 U.S. 15, 24 (Miller ), with two exceptions. [FN2] (*Dyke, supra*, 172 Cal.App.4th at pp. 1382–1383). The first difference is that section 313 requires the trier of fact to use a statewide standard as the relevant community standard by which the material is evaluated. (*Id*. at p. 1383.) The second distinction is that section 313 requires the trier of fact to determine whether the work lacks serious literary, artistic, political, or scientific value for minors, as opposed to considering how the material might otherwise be appreciated by the average adult. (*Ibid*.)

> [FN2] The *Miller* decision created a three-prong test to determine if material is obscene and thus subject to regulation by the states without offending the First Amendment to the United States Constitution. First, the trier of fact must decide if the average person applying contemporary community standards would conclude the material, taken as a whole, appeals to a prurient interest. Second, the trier of fact must determine whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law. Third, the trier of fact must determine whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. (*Miller, supra*, 413 U.S. at p. 24.)

In *Dyke*, the defendant was found guilty of exhibiting harmful matter to a 16–year–old girl in violation of former section 288.2, subdivision (a) based upon "only a bare-bones recital by [the victim] of what she saw: a nude woman dancing and a naked couple having sex, shown from the waist up, and her own characterization of it as 'pornography.'" (*Dyke, supra*, 172 Cal.App.4th at p. 1385.) The appellate court reversed the conviction for insufficient evidence due to a lack of information regarding the context in which nudity and sex had been portrayed in the subject material. (*Id*. at pp. 1385–1387.) The victim's labeling of the material as "pornography" was not probative of the issue because there had been "no testimony as to what she meant by that term, or how broadly it may have been intended." (*Id*. at p. 1384, fn. 5.)

The other leading case in this area is *People v. Powell* (2011) 194 Cal.App.4th 1268 (*Powell*). There, a 10–year–old victim not only characterized the movies shown to her as "pornographic," but described scenes containing "[p]enises, breasts, and vaginas featured in lewd displays as the actors 'did it,' i.e., engaged in sexual activity...." (*Id*. at pp. 1275, 1286, 1295.) Contrasting this evidence with the testimony found to be insufficient in Dyke, the Sixth District determined that it

met "the minimum required for a rational trier of fact to conclude that defendant forced the victim to watch obscene depictions within the meaning of section 313, subdivision (a)." (*Powell*, at p. 1295.)

The evidence in this case, while hardly overwhelming, permits a reasonable inference that the movie shown to Villalobos's victim met the statutory definition of "harmful matter." In light of the scene described in the victim's testimony, the very title of the movie, "Blonde Bimbos," suggests content promoting the sexual objectification of women. The premium rate of $13.99 per viewing offers another clue with respect to substance and context, as does Villalobos's admission at trial that the images of a woman unzipping a man's pants occurred during the opening minutes of the video. These facts alone may not have risen to the level of substantial evidence, but the threshold was met by proof that Villalobos actually admitted the video was "X-rated," which is a term commonly understood to mean "relating to or characterized by explicit sexual material or activity." (Merriam–Webster's Collegiate Dict. (11th ed.2003) p. 1149.)

On the witness stand, Villalobos denied ever telling police that he rented an X-rated movie and insisted the video was merely a form of "adult entertainment" akin to Playboy. He testified to his personal belief that adult entertainment is distinguishable from X-rated material because it can include movies that "don't show any privates." He further explained that Playboy-esque films do not contain graphic sex scenes. The jury was free to accept Villalobos's testimony regarding his understanding of the difference between "adult entertainment" and X-rated videos, but reject his denials about previously admitting that the movie he rented fell into the latter category. Taken as a whole and viewed in the light most favorable to the judgment, the evidence is sufficient to support the jury's conclusions regarding the issue of "harmful matter."

Appellant's remaining arguments concerning the element of intent require little discussion. "Intent is rarely susceptible of direct proof and must usually be inferred from a consideration of all the facts and circumstances shown by the evidence." (*People v. Pitts* (1990) 223 Cal.App.3d 606, 888.) Jurors could have easily inferred Villalobos's intent to seduce the victim, i.e., his intent to entice her into engaging in a sexual act involving physical contact, by the questions he asked her, such as whether she had ever "done what the girl was doing in the video to someone."

Villalobos, 2016 WL 3018773, at *3–4.

a. <u>Legal Standard</u>

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; see also <u>Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a

petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

    b.  Analysis

In this case, the state court first set forth the elements of the offense. As stated by the appellate court, Cal. Penal Code § 288.2 forbids knowingly exhibiting to a minor any type of "harmful matter" as that term is defined in § 313. Villalobos, 2016 WL 3018773, at *3. Cal. Penal Code § 313 defines "harmful matter" as "matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter

8

which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

The state court reasonably determined that there was sufficient evidence from which a rational trier of fact could have found each element. The title of the movie was "Blonde Bimbos," and it was an X-rated pay-per-view feature. Id. at *1. It depicted a woman wearing only underwear unzipping a man's pants within the first few minutes of the movie. Id. From these facts, a rational trier of fact could have found that the film appealed to the prurient interest, that it depicted patently offensive sexual material for minors, and that it lacked serious literary, artistic, political, or scientific value for minors. Id. at *2.

In his traverse, Petitioner states that his characterization of the movie as "X-rated" was the decisive factor in the state court's determination that the material met the requirements for "harmful matter." (Doc. 18 at 9.) He claims this was insufficient. However, as Petitioner himself notes, this was not the only evidence. (Doc. 18 at 8.) As stated above and as Petitioner notes, the court also relied on evidence that the movie was entitled "Blonde Bimbos," the movie was a pay-per-view item rented at a premium rate of $13.99, and the opening scene depicted a woman clad only in underwear unzipping a man's pants. (Doc. 18 at 7-8.) Viewing all of the facts in the light most favorable to the prosecution, a rational trier of fact could have determined that the material met the test for harmful matter. Petitioner fails to show that the state court rejection of his claim was objectively unreasonable. The claim should be denied.

## IV.     RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies

to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **March 13, 2018**                          **/s/ Jennifer L. Thurston**
                                                                            UNITED STATES MAGISTRATE JUDGE